## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **REGINALD EDWARDS**, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>**MID-HUDSON VALLEY FEDERAL CREDIT UNION**,<br><br>Defendant. | Case No.   Case No.: 1:22-CV-0562 (TJM/CFH)<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Reginald Edwards, by counsel, and for his Class Action Complaint against the Defendant Mid-Hudson Valley Federal Credit Union, alleges as follows:

## INTRODUCTION

1.     Plaintiff brings this action individually and on behalf of all similarly situated consumers against Defendant Mid-Hudson Valley Federal Credit Union ("MHVFCU" or "Bank"), arising from its routine practice assessing more than one insufficient funds fee ("NSF Fee") on the same transaction.

2.     MHVFCU's customers have been injured by the Bank's improper practices to the tune of millions of dollars bilked from their accounts in violation MHVFCU's clear contractual commitments.

3.     Plaintiff, on behalf of himself and two Classes of similarly situated consumers, seeks to end MHVFCU's abusive and predatory practices and force it to refund all of these improper charges. Plaintiff asserts a claim for breach of contract, including breach of the covenant of good faith and fair dealing, and seeks damages, restitution, and injunctive relief, as set forth more fully below.

4.     While there is nothing unlawful about assessing NSF Fees on accounts when such fees are assessed in compliance with contractual terms, NSF Fees in general have a crushing impact on persons living paycheck to paycheck.  This is why the financial services industry is increasingly moving away from such fees.

5.      For example, one of the nation's largest consumer banks, Ally Bank recently stopped assessing overdraft fees altogether.  Diane Morais, Ally Bank's president of consumer and commercial banking, said that one reason is because NSF Fees disproportionately affect people who are living paycheck to paycheck and that NSF Fees disproportionately affect Black and Latino households. *Overdraft Fees Are Getting the Boot at Ally Financial*, The Wall Street Journal (June 2, 2021),  https://www.wsj.com/articles/overdraft-fees-are-getting-the-boot-at-ally-financial-11622631600 (last accessed June 4, 2021).

6.      Indeed, Black households and those with low-to-moderate incomes are almost twice as likely to incur NSF Fees as white households or those with higher incomes, according to a report from the Financial Health Network, a research firm partly funded by financial institutions.

## PARTIES

7.      Plaintiff is a citizen and resident of Bronx, New York.

8.      Defendant MHVFCU is engaged in the business of providing retail banking services to consumers, including Plaintiff and members of the putative Classes. MHVFCU has its headquarters in New York, New York and operates banking branches throughout New York.

## JURISDICTION AND VENUE

9.       This Court has original jurisdiction of this action, among other reasons, under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed Class is comprised of at least 100 members; (2) at least one member of the proposed class resides outside of Colorado; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs.

10.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because MHVFCU is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

**I.    MHVFCU CHARGES MORE THAN ONE FEE ON THE SAME TRANSACTION**

11.    MHVFCU's Account Documents allow MHVFCU to charge a *single* $35 NSF Fee when a transaction was returned for insufficient funds or paid despite insufficient funds.

12.    MHVFCU breached its Account Documents by charging more than one $35 NSF Fee on the same transaction, since the contract explicitly states—and reasonable consumers understand—that the same transaction can only incur a single NSF Fee.

13.    A recent Washington Post article discussed predatory overdraft fees, labeling NSF fees like those MHVFCU imposes as "indefensible" because "the customer gets hit with multiple charges for the same item." *I bought my kids dinner – and saw firsthand how overdraft fees punish the poor,* The Washington Post (October 1, 2021), https://www.washingtonpost.com/outlook/i-bought-my-kids-dinner--and-saw-firsthand-how-overdraft-fees-punish-the-poor/2021/09/30/32383c40-216e-11ec-b3d6-8cdebe60d3e2_story.html (last accessed October 8, 2021). The banks "are charging a fee for doing literally nothing.... [T]his is like asking a friend if I can borrow $20, only to have him take $10 out of my wallet for turning down my request." *Id.*

14.    In its latest issue of *Consumer Compliance Supervisory Highlights*, the FDIC addressed the charging of multiple non-sufficient funds fees for transactions presented multiple times against insufficient funds in the customer's account. FDIC examiners have scrutinized this issue in recent exams, with some exams remaining open pending resolution of the issue. In the Supervisory Highlights, the FDIC discussed potential consumer harm from this practice in terms of both deception and unfairness under the Federal Trade Commission Act Section 5's prohibition on unfair or deceptive acts or practices. The FDIC stated that the "failure to disclose material information to customers about re-presentment practices and fees"—i.e., unclear definitions of "per item or "per transaction"—may be deceptive:

During 2021, the FDIC identified consumer harm when financial institutions charged multiple NSF fees for the re-presentment of unpaid transactions. Some disclosures and account agreements explained that one NSF fee would be charged "per item" or "per transaction." These terms were not clearly defined and disclosure forms did not explain that the same transaction might result in multiple NSF fees if re-presented. While case-specific facts would determine whether a practice is in violation of a law or regulation, the failure to disclose material information to customers about re-presentment practices and fees may be deceptive. This practice may also be unfair if there is the likelihood of substantial injury for customers, if injury is not reasonably avoidable, and if there is no countervailing benefit to customers or competition. For example, there is risk of unfairness if multiple fees are assessed for the same transaction in a short period of time without sufficient notice or opportunity for consumers to bring their account to a positive balance.

*Consumer Compliance Supervisory Highlights*, Federal Deposit Insurance Corporation, p. 8 (March 2022), https://www.fdic.gov/regulations/examinations/consumer-compliance-supervisory-highlights/documents/ccs-highlights-march2022.pdf (last accessed May 25, 2022).

15.    In its staff analysis of the issue, the American Bankers Association recommended that banks review their deposit account agreement to ensure it states clearly that a separate NSF fee will be assessed each time the same item is resubmitted against insufficient funds. ABA also encouraged banks, if scrutinized by a regulator, to explain the significant logistical challenges with identifying items that have been resubmitted by the merchant for payment against insufficient funds. ABA is updating its staff analysis of this issue to reflect the Supervisory Highlights.

16.    MHVFCU's abusive practices are not standard within the financial services industry. Indeed, major banks like Wells Fargo—one of the largest consumer banks in the country—charge one NSF Fee per item, even if that item is resubmitted for payment multiple times. And while some other banks engage in the same practices as MHVFCU, their members agree to terms authorizing the fee practice.

17.    MHVFCU's Account Documents do not say that MHVFCU may repeatedly charge customers multiple fees on a single transaction. To the contrary, the Account Documents indicated MHVFCU will only charge a single NSF Fee on a transaction.

**A.    Plaintiff's Experiences.**

18.    In support of his claim, Plaintiff offers examples of fees that should not have been assessed against his checking account. As alleged below, MHVFCU: (a) reprocessed previously declined transactions; and (b) charged an additional fee upon reprocessing.

19.    For example, on February 23, 2021 and April 23, 2021, Plaintiff was charged $35 NSF Fees on transactions which were resubmitted by the merchant for payment without Plaintiff's request to reprocess the transactions. The re-submitted transactions were specifically labeled as "RETRY PYMT" on his statements.

20.    Each merchant request for payment was for a single transaction and, as is laid out in MHVFCU's Account Documents, should be subject to, at most, a single NSF Fee (if MHVFCU returned it or paid it).

**B.    The Imposition of Multiple Fees on a Single Transaction Violates MHVFCU's Express Promises and Representations.**

21.    MHVFCU's Account Documents state that the Bank will assess a single fee of $35 for a transaction that is returned due to insufficient funds.

> Non-Sufficient-Funds*                    $35
> (*By Check, ATM/POS withdrawal, ACH, or other electronic means*)
>
> …
>
> *Based on available balance*

Ex. A, p. 4.

22.    The same check, ACH, or other electronic payment on an account is not a new item each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit the transaction.

23. Even if MHVFCU reprocesses an instruction for payment, it is still the same item. The Bank's reprocessing is simply another attempt to effectuate an accountholder's original order or instruction.

24. As alleged herein, Plaintiff took only a single action to make a single payment; he therefore created only one transaction and may be charged only a single fee.

25. As the disclosures described above show, Plaintiff never agreed that MHVFCU may assess multiple NSF Fees for a transaction that was returned for insufficient funds and later reprocessed one or more times and returned again.

26. In sum, MHVFCU promised that one $35 NSF Fee will be assessed per item, and this must mean all iterations of the same instruction for payment. As such, MHVFCU breached the contract when it charged more than one fee per transaction.

27. A reasonable consumer would understand that MHVFCU's Account Documents permit it to assess an NSF Fee only once per item.

28. Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same item, which the Bank will either pay (resulting in an overdraft item) or return (resulting in a returned transaction) when it decides there are insufficient funds in the account. Nowhere do MHVFCU and its customers agree that MHVFCU will treat each reprocessing of a check or ACH payment as a separate transaction, subject to additional fees.

29. Customers reasonably understand, based on the language of the Account Documents, that the Bank's attempts to reprocess checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger additional NSF Fees. In other words, it is always the same transaction.

30.    Banks like MHVFCU that employ this abusive multiple fee practice know how to plainly and clearly disclose it. Indeed, other banks and credit unions that engage in this abusive practice require their accountholders to expressly authorize it—something MHVFCU only recently did.

31.    In fact, very recently in 2022, MHVFCU updated its account documents to disclose the practice for the first time. The current membership agreement states:

> **Representment:** If an item (ACH, check, etc) is presented to your account and you do not have the available funds to cover it, you will be charged an NSF fee. All items may be represented for payment a maximum of 3 times, each separately incurring fees.

32.    Prior to adding this disclosure to its membership agreement, MHVFCU's account documents contained no such warning.

33.    MHVFCU's new disclosure brings it in line with other banks and credit unions, which routinely disclose the practice. For example, First Hawaiian Bank engages in the same abusive practices as MHVFCU, but at least currently discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

*Terms and Conditions of FHB Online Services*, First Hawaiian Bank 40, https://bit.ly/2KWMvTg (last accessed Jan. 28, 2021) (emphasis added).

34.    Klein Bank similarly states in its online banking agreement:

> [W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. **We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.**

*Consumer Account Terms and Conditions*, Klein Bank 4 (Jan. 2013), https://bit.ly/2KVCkhI (emphasis added).

35.    Central Pacific Bank, a leading bank in Hawai'i, states in its deposit account under the "MULTIPLE NSF FEES" subsection:

> Items and transactions (such as, for example, checks and electronic transactions/payments) returned unpaid due to insufficient/non-sufficient funds ("NSF") in your account, may be resubmitted one or more times for payment, and a returned item/transaction fee will be imposed on you each time an item and transaction resubmitted for payment is returned due to insufficient/non-sufficient funds.

*Miscellaneous    Fee    Schedule*,    Central    Pacific    Bank    1    (Jan.    4.    2021), https://www.cpb.bank/media/2776/fee-001.pdf (last accessed June 4, 2021).

36.    BP Credit Union likewise states: "We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item." *Membership and Account Agreement,* BP Federal Credit Union, ¶ 14(a), https://www.bpfcu.org/images/docs/membership-agreement.pdf (last accessed June 4, 2021).

37.    Regions Bank likewise states:

> If an item is presented for payment on your account at a time when there is an insufficient balance of available funds in your account to pay the item in full, you agree to pay us our charge for items drawn against insufficient or unavailable funds, whether or not we pay the item. If any item is presented again after having previously been returned unpaid by us, you agree to pay this charge for each time the item is presented for payment and the balance of available funds in your account is insufficient to pay the item.

*Deposit Agreement*, Regions Bank 18 (2018), https://bit.ly/2L0vx6A (last accessed June 4, 2021).

38.    Andrews Federal Credit Union states:

> You understand and agree that a merchant or other entity may make multiple attempts to resubmit a returned item for payment. Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to use for payment, and regardless of whether we pay the item or return,

reverse, or decline to pay the item. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

*Terms & Conditions*, Andrews Federal Credit Union 17 (Aug. 2020), ¶ 6, https://bit.ly/3iXEdHb (last

accessed June 4, 2021).

39.     Consumers Credit Union states:

Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

*Member Services Guide*, Consumers Credit Union 5 (Apr. 2020), ¶ 11a, https://bit.ly/3iVM1ta (last

accessed June 4, 2021).

40.     Wright Patt Credit Union states:

Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and represented regardless of the number of times an item is presented or represented to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

*Important Account Information*, Wright Patt Credit Union 13 (July 2020), ¶ 6.1, (last accessed June 4,

2021).

41.     Railroad & Industrial Federal Credit Union states:

Consequently, because we may charge an NSF fee for an NSF item each time it is presented, we may charge you more than one NSF fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

*Important Account Information for Our Members*, Railroad & Industrial Federal Credit Union, p. 2, (Aug.

1, 2019), https://bit.ly/3t5ehhF (last accessed June 4, 2021).

42.     Partners 1st Federal Credit Union states:

Consequently, because we may charge a fee for an NSF item each time it is presented, we may charge you more than one fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

*Consumer Membership & Account Agreement*, Partners 1st Federal Credit Union, p. 11 (Sept. 15, 2019),

https://bit.ly/39pDZWb (last accessed March 2, 2021).

43.    Members First Credit Union states:

We reserve the right to charge an Non-Sufficient Funds Fee (NSF Fee) each time a transaction is presented if your account does not have sufficient funds to cover the transaction at the time of presentment and we decline the transaction for that reason. **This means that a transaction may incur more than one Non-Sufficient Funds Fee (NSF Fee) if it is presented more than once** . . . we reserve the right to charge a Non-Sufficient Funds (NSF Fee) for both the original presentment and the representment[.]

*Membership and Account Agreement*, Members First Credit Union of Florida 3, https://bit.ly/39rRJ2Y

(last accessed March 2, 2021).

44.    Community Bank, N.A. states:

We cannot dictate whether or not (or how many times) a merchant will submit a previously presented item. You may be charged more than one Overdraft or NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned.

*Overdraft and Unavailable Funds Practices Disclosure*, Community Bank 5 (Nov. 12, 2019),

https://bit.ly/3iY9dH2 (last accessed June 4, 2021).

45.    RBC Bank states:

We may also charge against the Account an NSF fee for each item returned or rejected, including for multiple returns or rejections of the same item.

*Service Agreement for Personal Accounts*, RBC Bank 13 (Sept. 17, 2014), https://bit.ly/3otUtko (last

accessed June 4, 2021).

46.    Diamond Lakes Credit Union states,

Your account may be subject to a fee for each item regardless of whether we pay or return the item. We may charge a fee each time an item is submitted or resubmitted for payment;

therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item.

*Membership and Account Agreement*, Diamond Lakes Federal Credit Union, https://bit.ly/39o2P94 (last accessed June 4, 2021).

47.     Parkside Credit Union states,

If the Credit Union returns the item, you will be assessed an NSF Fee. Note that the Credit Union has no control over how many times an intended payee may resubmit the same check or other item to us for payment. In the event the same check or other item is presented for payment on more than one occasion, your account will be subject to an additional charge on each occasion that the item is presented for payment. There is no limit to the total fees the Credit Union may charge you for overdrawing your account.

*Membership and Account Agreement*, Parkside Credit Union 21 (Jan. 30, 2020), https://bit.ly/3aaXfpG (last accessed March 2, 2021).

48.     MHVFCU provided no such disclosure until recently, and by not doing so, deceived its accountholders.

**C.     The Imposition of Multiple Fees on a Single Transaction Breaches MHVFCU's Duty of Good Faith and Fair Dealing.**

49.     Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are vested with a discretionary power over the other party. Further, as to bank transactions, the Uniform Commercial Code ("UCC")—which has been adopted by all states—mandates good faith and fair dealing. As such, when a party such as MHVFCU gives itself discretion to act, the party with discretion is required to exercise that power and discretion in good faith. This creates an implied promise to act in accordance with the parties' reasonable expectations and means that the Bank is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, the Bank has a duty to honor transaction requests in a way that is fair to Plaintiff and its other customers and is prohibited from exercising its discretion to pile on ever greater penalties.

50.    Here—in the adhesion agreements MHVFCU foisted on Plaintiff and its other customers—MHVFCU has provided itself numerous discretionary powers affecting customers' bank accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, the Bank abuses that discretion to take money out of consumers' accounts without their permission and contrary to their reasonable expectations that they will not be charged multiple fees for the same transaction.

51.    MHVFCU exercises its discretion in its own favor—and to the prejudice of Plaintiff and its other customers—when it defines its account documents in a way that directly leads to more NSF Fees. Further, MHVFCU abuses the power it has over customers and their bank accounts and acts contrary to their reasonable expectations under the Account Documents. This is a breach of the Bank's implied covenant to engage in fair dealing and act in good faith.

52.    By exercising its discretion in its own favor—and to the prejudice of Plaintiff and other customers—by charging more than one fee on a single transaction, MHVFCU breaches the reasonable expectation of Plaintiff and other customers and in doing so violates the implied covenant to act in good faith.

53.    It was bad faith and totally outside Plaintiff's reasonable expectations for MHVFCU to use its discretion to assess multiple NSF Fees for a single attempted payment.

## CLASS ACTION ALLEGATIONS

54.    Plaintiff brings this action on behalf of himself, and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

55.    The proposed classes are defined as:

All MHVFCU checking account holders in the United States who, during the applicable statute of limitations, were charged multiple fees on the same item (the "National Class").

All MHVFCU checking account holders in the State of New York who, during the applicable statute of limitations, were charged multiple fees on the same item (the "New York Subclass").

The classes are collectively referred to as the "Classes."

56.    Plaintiff reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

57.    Excluded from the Classes are MHVFCU, its parents, subsidiaries, affiliates, officers and directors, any entity in which MHVFCU has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

58.    The members of the Classes are so numerous that joinder is impractical.  The Classes consist of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to MHVFCU's records.

59.    The claims of Plaintiff are typical of the claims of the Classes in that he, like all Class members, was charged improper NSF Fees. Plaintiff, like all Class members, has been damaged by MHVFCU's misconduct in that he paid improper NSF Fees.  Furthermore, the factual basis of MHVFCU's misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes.

60.    There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual Class members.

61.    Among the questions of law and fact common to the Classes are whether MHVFCU:

    a.    Charged multiple fees on a single transaction;

    b.    Breached its contract with consumers by charging multiple fees on a single transaction;

    c.    Breached the covenant of good faith and fair dealing by charging multiple fees on

a single transaction;

d.     Whether Plaintiff and the Classes were damaged by MHVFCU's conduct and if so, the proper measure of damages.

62.    Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

63.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of MHVFCU, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and MHVFCU's misconduct will proceed without remedy. Moreover, given that the improper fees were assessed in a uniform manner, common issues predominate over any questions, to the extent there are any, affecting only individual members.

64.    Even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing**
**(On Behalf of Plaintiff and the Classes)**

65.    The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

66.    Plaintiff and MHVFCU have contracted for bank account deposit, checking, ATM, and debit card services. That contract does not permit MHVFCU to charge multiple fees for the same item.

67.    Further, under the laws of New York, good faith is an element of every contract, including the instant Account Documents pertaining to the assessment of NSF Fees. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

68.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. A failure to act in good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of violations of good faith and fair dealing include evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

69.    MHVFCU has breached the covenant of good faith and fair dealing in its contract with customers by charging multiple fees for the same item.

70.    MHVFCU also breached the express terms of its contract with Plaintiff and the Multi NSF Classes by charging multiple fees on the same item.

71.     Plaintiff and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the contract.

72.     Plaintiff and members of the Classes have sustained damages as a result of MHVFCU's breach of the contract.

### SECOND CLAIM FOR RELIEF
### Violations of New York General Business § 349, *et seq*.
### (On Behalf of Plaintiff and the New York Subclass)

73.     The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

74.     This claim is asserted on behalf of the members of the New York Sub-Classes under New York's consumer protection law, New York General Business Law § 349, et seq. ("GBL § 349").

75.     MHVFCU engaged in deceptive acts or practices relating to the imposition of overdraft fees on consumers, in violation of GBL § 349, N.Y. Gen. Bus. Law § 349(a).

76.     GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." *Id.*

77.     MHVFCU engaged in deceptive acts or practices, unlawful conduct, made affirmative misrepresentations, or otherwise violated GBL § 349 by, *inter alia*, knowingly and intentionally employing an unfair and deceptive policy as described herein.

78.     MHVFCU also engaged in unlawful conduct, made affirmative misrepresentations, or otherwise violated GBL § 349.

79.     MHVFCU's deceptive acts or practices were "consumer-oriented." *E.g., Wilson v. Northwestern Mut. Ins. Co*., 625 F.3d 54, 64 (2d Cir. 2010) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, NA., 85 N.Y.2d 20, 623 N.Y.S.2d 529, 532-33, 647 N.E.2d 741 (1995)).

80.    MHVFCU intended that Plaintiff and the members of the New York Subclasses rely on the acts of concealment and deception, so that Plaintiff and the members of the New York Subclasses would incur additional NSF Fees.

81.    MHVFCU's conduct caused Plaintiff and the members of the New York Subclasses to suffer ascertainable losses in the form of improper NSF Fees that, but for MHVFCU's unfair and deceptive policies, would not otherwise have been imposed.

82.    A causal relationship exists between MHVFCU's unlawful conduct and the ascertainable losses suffered by Plaintiff and the members of the New York Subclasses. Had MHVFCU kept its promises, Plaintiff and the members of the New York Subclasses would not have incurred certain NSF Fees in violation of GBL § 349.

83.    As redress for MHVFCU's repeated and ongoing violations of GBL § 349, Plaintiff and the New York Subclasses are entitled to, *inter alia*, actual damages, treble damages, declaratory relief, and reasonable attorney's fees. N.Y. Gen. Bus. Law. § 349(h).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and members of the Classes demand a jury trial on all claims so triable and judgment as follows:

A.    An order certifying that this action may be maintained as a class action, that Plaintiff be appointed Class Representative and that Plaintiff's counsel be appointed Class Counsel;

B.    Declaring MHVFCU's NSF Fee policies and practices to be wrongful, unfair, and unconscionable;

C.    Ordering MHVFCU to immediately cease the wrongful conduct set forth above and enjoining MHVFCU from conducting business via the unlawful and unfair business acts and practices complained of herein;

D.    Restitution of all wrongful NSF Fees paid to MHVFCU by Plaintiff and members of the Classes as a result of the wrongs alleged herein in an amount to be determined at trial;

E.    Actual and exemplary damages in an amount to be determined at trial;

F.    Pre-judgment interest at the maximum rate permitted by applicable law;

G.    Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law;

H.    Granting such other relief as the Court deems just and proper.

## TRIAL BY JURY IS DEMANDED

Plaintiff respectfully demands a trial by jury on all issues so triable.

Dated:  May 26, 2022                          Respectfully submitted,

By:*/s/ Jeffrey D. Kaliel*
Jeffrey D. Kaliel (Bar Roll No. 518372)
KALIELGOLD PLLC
1100 15th Street NW, 4th Floor
Washington, D.C.  20005
(202) 350-4783
*jkaliel@kalielpllc.com*

Sophia G. Gold (Bar Roll No. 701241)
KALIELGOLD PLLC
950 Gilman Street, Suite 200
Berkeley, CA 94710
(202) 350-4783
*sgold@kalielgold.com*

*Attorneys for Plaintiff and the Putative Class*